### MARKIEWICZ, Estate of, In re. (Two cases.)

Probate Court, Franklin County.

Nos. 162783, 163179. Decided August 22, 1955.

Robert M. Draper, Columbus, for estate of Henry Markiewicz.
Kenneth L. Sater, Columbus, for estate of Josephine Markiewicz.

## OPINION

By WALCUTT, J.

The estates of both decedents, Henry V. Markiewicz and Josephine Markiewicz, are being administered in this Court. In the inventory and appraisement filed in each case there are listed four bank and savings accounts under Schedule D, Accounts and Debts Receivable, as follows:

| | |
|---|---|
| Columbus Savings Bank Company, checking account, | $6,657.81; |
| Clintonville Federal Savings and Loan Assn., savings account, | $3,822.08; |
| Central Savings & Loan Company, savings account, | $9,768.58; |
| State Savings & Loan Company, savings account, | $7,000.00. |

The fiduciary in each estate has filed exceptions to the inventory and appraisement of the other, alleging that the items of personal property above set forth are the property of his estate.

By agreement of the parties the two matters are heard together, and are submitted to the Court upon the statements of counsel, the evidence and the briefs.

The account in the Columbus Savings Bank is a commercial or checking account opened on October 17th, 1940, in the name of "Henry or Josephine Markiewicz." The signature card, signed by both parties, contains the provision:

JOINT ACCOUNT—Payable to Either or Survivor. We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be, our joint property and owned by us, as joint tenants, with right of survivorship and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account, or any part thereof, may be withdrawn by, or upon the order of, either of us, or the survivor. It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

The bank statements, containing the record of many deposits and withdrawals, each bear the notation, "Joint Account—Payable to Either or Survivor." The Vice President of the Bank testified that this represented all of the contract between the depositors and the Bank, that the Bank would honor the signature of either party, and that there has been no revocation of the joint and survivorship features of the account.

The account in the Clintonville Federal Savings and Loan Association is a savings account opened on December 29, 1949, in the name of Josephine Markiewicz or Henry Markiewicz or the survivor. The signature card shows, the signatures of each party and contains the following:

The undersigned hereby apply for membership and for a savings share account in the CLINTONVILLE FEDERAL SAVINGS AND LOAN ASSOCIATION OF COLUMBUS and for the issuance of evidence of membership in the approved form in the joint names of the undersigned as

joint tenants with the right of survivorship and not as tenants in common. Receipt is hereby acknowledged of a copy of the charter and by-laws of said association. Specimens of the signatures of the undersigned are shown below and the association is hereby authorized to act without further inquiry in accordance with writings bearing any such signature; it being understood and agreed that any one of the undersigned who shall first act shall have power to act in all matters related to the membership and any share account in said association held by the undersigned, whether the other person or persons named in the certificate be living or not. The reproduced or redemption value of any such share account or other rights relating thereto may be paid or delivered in whole or in part to anyone of the undersigned, who shall first act, and such payment or delivery or a receipt or acquittance signed by any one of the undersigned shall be valid and sufficient release and discharge of said association.

The records of the account, showing deposits, dividend accounts and withddrawals, bear the denomination, "Josephine Markiewicz or Henry Markiewicz or Survivor." The "Joint Membership Certificate" reads as follows:

Joint Membership Certificate

No. 6539

This certifies that Josephine Markiewicz or Henry Markiewicz or Survivor as joint tenants with the right of survivorship and not as tenants in common, is a member of the Clintonville Federal Savings and Loan Association of Columbus and holds a Savings Share Account of said Association, subject to its Charter and By-laws and to the laws of the United States of America.

The president of the company testified that there had been no revocation of the joint and survivorship features.

The savings account in the Central Savings and Loan Company was opened on December 31st, 1953, in the name of "Mrs. Josephine Markiewicz, or Henry Markiewicz," and the record shows the following on the signature card, which bears both signatures:

Henry or Josephine Markiewicz

This card is signed to ratify my or our agreement to conform to and abide by the by-laws, rules, and regulations and to any amendments thereof of the Central Building Loan & Savings Co., Columbus, Ohio.

JOINT ACCOUNT—Payable to either or survivor. We agree and declare that all funds now, or hereafter deposited in this account are, and shall be our joint property, and owned by us as joint tenants, with right of survivorship and not as tenants. in common, and upon the death of either of us, any balance in said account shall become the absolute property of the survivor. The entire account, or any part thereof, may be withdrawn by, or upon the order of, either of us, or the survivor.

It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

The statement of the account shows deposits, interest accruals, and withdrawals, and is headed, "Mrs. Josephine Markiewicz, or Henry

Markiewicz, Joint Account—Payable to Either or Survivor." There has been no revocation.

The State Savings and Loan Company account was opened on December 19, 1951, in the name of "Markiewicz, Henry or Josephine or Survivor," and the signature card, which bears both their signatures, contains this provision:

### Joint and Survivorship Agreement

We hereby contract and agree that the subject item is the joint property of the undersigned and authorize and instruct you to pay or transfer all or any part of said item, including any additions thereto, to or on the order of any one or more of us before, after and notwithstanding the death or other incapacity of one or more of us. Such payment or transfer shall be a valid discharge to your Company to the extent of such payment or transfer as against us, either of us, or anyone claiming under or through us.

The account sheet bears the name, "Markiewicz, Henry or Josephine or Survivor," and there is no revocation.

It is conceded by counsel that Henry V. Markiewicz and Josephine Markiewicz and their children were instantly killed in an aeroplane accident near the City of Warsaw, Indiana, on November 28th, 1954, and that there are no lineal descendants. Counsel for the Estate of Henry V. Markiewicz says in his brief, "In the case at bar the evidence shows that said parties died simultaneously"; and counsel for the Estate of Josephine Markiewicz quotes as stating the fact the report of the coroner, that "it is my opinion that all members of the Henry Markiewicz family died instantly and simultaneously, because they all had broken necks, which would have been caused when the plane hit the ground."

In the case at bar under the circumstances the conclusion must be that the deaths were simultaneous, because no evidence can be produced to show and there are no presumptions to dictate otherwise. The law will not presume that all died at the same instant, nor does it presume that one survived the other, and this is true regardless of the age or sex of the victims. 13 O. Jur., 376.

Quoting from 29 O. C. A., 353 at page 355, Ware v. Kinch, which seems to express the law of Ohio:

While there is no presumption that two persons who perish in a common disaster die at the same time, still if there is no evidence which establishes by the degree of proof required that one or the other died first, then the fact of survivorship can not be ascertained and the law is applied as if they both died at the same time. In other words, the impossibility of proving which died first, so far as the question of burden of proof is concerned, leads to the same conclusion as a presumption that they both died at the same time.

To the same effect in a case involving the payment of the proceeds of a life insurance policy in In re Estate of Helen V. Francis, Deceased, 29 O. O. 502:

A husband and wife being killed in a common accident, and it being impossible to determine that either one survived the other, the presumption must be that their deaths were simultaneous, and that neither one survived the other.

There being no survivor, the question then is to whom do the funds hereinbefore enumerated belong?

**Sec. 2105.21 R. C.,** which provides in part as follows, has been cited:

When there is no evidence of the order in which the death of two or more persons occurred, no one of such persons shall be presumed to have died first and the estate of each shall pass and descend as though he had survived the others. When the surviving spouse or other heir at law, legatee or devisee dies within thirty days after the death of the decedent, the estate of such first decedent shall pass and descend as though he had survived such surviving spouse, or other heir at law, legatee or devisee.

This is a statute governing descent and distribution and has no application at this stage of the case to the question of ownership.

**Sec. 1105.09 R. C.,** has been referred to. It says:

When a deposit is made, in any bank or trust company transacting business in this state, in the name of two or more persons, payable to either or the survivor, such deposit or any part thereof, or any interest or dividend thereon, may be paid to either of said persons, whether the other is living or not, and the receipt or acquittance of the person paid is a sufficient release and discharge of the bank for any payments so made.

This section can not have application here as it relates to the protection of the bank in its payments to a party or the survivor.

This relates only to payments when there is a survivor, which is not this case.

There are also produced in evidence copies of the joint income tax returns of Henry and Josephine Markiewicz from 1949, which the accountant who prepared them says carries only income realized from investments and personal salary of Henry Markiewicz.

Counsel for the husband's estate also introduces stock certificates and other evidence to show the investments of the husband in various companies and partnerships in which he was interested.

The testimony of the deceased husband's brother shows that the financial situation of the Markiewicz family in Chicago before coming to Columbus in 1945 was not too good, and that the wife worked for several years after their marriage in 1937, at least until the birth of their first child, and also in Columbus in a grill which the husband had purchased. This is corroborated by the mother and a brother of the wife. The husband's brother says that the wife received no compensation for the work in the Columbus grill.

The evidence further shows that while in Chicago a partnership called Dalmar Tool and Engineering was formed, which ceased to exist at about the time the decedents moved to Columbus. The partners were Henry Markiewicz, Josephine Markiewicz, Delbert Palmer and Louis Palmer. Each partner was entitled to a drawing account of $50.00 per week, and they were to share equally the profits and losses. Henry Markiewicz and Delbert Palmer were the managing partners with full and complete control of the partnership affairs.

This testimony was presented by counsel for the Henry Markiewicz estate on the theory that resort must be had to the individual contributions to the account by the contracting parties.

The accounts in this case are joint and survivorship accounts. The law in Ohio is that joint accounts do not exist as a matter of common law, and that, where created, survivorship is not a necessary incident thereto. But it is uniformly held that joint and survivorship accounts may legally be created by the contract of the parties. Most of the adjudicated cases in this state have to do with the right of the survivor to the fund. **137 Oh St 297.**

In the present case the rights to be determined are to the fund without respect to the matter of survivorship. The deaths were simultaneous and there was no survivor.

In the annotations under this subject in Moskowitz v. Marrow, 66, A. L. R., 870, at page 382, the New York Court of Appeals calls attention to the fact that the courts in passing upon the rights of survivorship have not always distinguished clearly as to whether they base their decisions upon the theory of gift or of trust, and 22 **Oh Ap 213**, and 114 **Oh St 241**, are cited as failing to make the distinction. We believe, however, that under these circumstances in this state the rights of the parties are based on contract.

The discussion referred to by counsel for the deceased husband in 7 Am. Jur., page 302, section 428, refers to the situation where only the fact of deposit to joint account appears, which is the situation in this case except for the evidence that in later years, since the parties came to Columbus, the income of the parties was wholly represented, except perhaps for the time the wife was working at the Main Street Tavern, by earnings of the husband:

The intention of the owner of money in depositing in a joint account is, of course, a question of fact where there is evidence as to the intention. In many cases, however, there is no such evidence, and then it is necessary to determine the rights of the survivor from the fact of a deposit in this form. The rule sustained by the majority of cases is that the mere fact that money is deposited to the account of the owner and another or of the owner or another does not show an intention to make a gift. According to the view just taken it is deemed that such a form of deposit is entirely consistent with a desire on the part of the owner to give his co-depositor authority to withdraw money for the owner. The absence of the delivery of the passbook is to be considered in this connection as bearing upon the intent with which the deposit is made; but the possession of the passbook is not conclusive of the existence or non-existence of a gift. Other cases, however, hold that the mere fact that a joint account is opened or is changed into such form by the donor without any further explanation indicates an intention to make a gift. Before the prima facie case can be destroyed there must be a finding that the opening or changing of the account was for some other purpose. In other words, there is a presumption of a gift in such case. Some cases limit this presumption of a gift to cases in which the joint tenants are husband and wife or parent and child.

In some states this has been changed by statute to make such opening or changing of account presumptive or conclusive evidence of intention to make a gift.

**Re Estate of Kessler, 85 Oh Ap 240,** is cited. In that case there

was no question of a joint and survivorship account. The Court held that by reason of the contract the survivor took the entire fund. In its opinion the Court discussed the unreported case of Hitchcock v. Semple, decided April 8th, 1934, by the Court of Appeals of Ashland County, in which a motion to certify was overruled by the Supreme Court. There it was clear that the parties had contracted for a joint account and that the Bank had, without authority, added the words of survivorship. The Court there held that the addition of the words "or the survivor" was without authorization, and that the account was a joint account in which the parties shared equally.

Buckley v. Buckley, 17 N. E. 2nd, 887 (Massachusetts), is cited to show that resort must be had to the contributions of the parties to show the ownership of the account. But in that case the trial court had specifically found that there was no gift to the wife, that the wife had authority to withdraw for certain purposes, and if anything should happen to the husband, it was to be the wife's property. The account was opened with money of the wife, but all subsequent deposits were made by the husband under the agreement or contract found to exist. That case is not on all fours with our case.

Syllabus 4 of Commercial Trust Co. v. White, 99 N. J. Eq., 119, says:

Where the donor and donee signed a signature card, by which a savings bank was directed to open an account in the name of "J. B. or L. A. D. as joint tenants, either and the survivor to draw," or equivalent words, such form of deposit is evidence of a gift to the donee to take effect in praesenti, and the balance of the credit of the account belongs to the donee on the death of the donor, unless it appears from the evidence that the donor had no donative intent in naming the donee as joint owner.

Does the evidence in this case negative such "donative intent"?

Reference is also made to **Union Properties, Inc., v. Cleveland Trust Co. et, 152 Oh St 430.** There Union Properties, Inc., obtained judgment by default against John Allen in Municipal Court. The Trust Company was brought in on proceedings in aid of execution. The Bank did not comply with order to pay Union Properties but paid the sum claimed into Court. John Allen and his wife, Needa Allen, were made parties. Needa Allen averred that the money set up in a joint and survivorship account in the bank was at all times her property. The evidence showed that John Allen had made a deposit of $100.00 in the Bank in July 1941. Later the name of Needa Allen was added on the records of the Bank, and either was authorized to draw money from the account, with balance payable to the survivor at death. John Allen testified that he had had no regular employment for years, that his wife by reason of an injury could not go to the Bank, and that he took the money for her. Needa Allen testified that the remaining deposits were for the most part payments to her by a nephew during his service in the United States Army. The lower Court held that the money belonged to the wife and might not be subjected to the payment of a judgment against the husband.

The Supreme Court says:

In the case of **Cleveland Trust Co. v. Scobey, 114 Oh St 241,** this Court laid down the rule since adhered to in principle that where one

opens a savings account in a bank to the joint credit of himself and another, payable to either or the survivor, and it is apparent that the depositor intended to transfer to the person to whom he made the account jointly payable, a present joint interest therein equal to his own, the person to whom the account is made jointly payable is entitled to the balance of the money in the account upon the death of the depositor as against the claim thereto of the depositor's personal representative. * * * Here we are concerned wholly with a subsisting deposit intact, and the rights, intention and attitude of the depositors with respect thereto during their joint lives. In our judgment in controversies like the present one, involving the deposit and arising during the joint lives of the depositors, the form of the deposit should not be treated as conclusive on the subject of joint ownership, and the door should be open to evidence that the deposit was in truth made and maintained on a different basis. In other words, the "realities of ownership" may be shown. (Citing 251 N. Y., 380; 301 Mass., 530; 57 R. I., 411.) * * * In general the cases concede or assume that parol or other evidence is admissible to show the truth of the intent of the parties to a formal joint account, even where by signature card or otherwise it would appear that joint and equal interests were created. * * * This Court does not weigh evidence. Both the lower courts found in effect on evidence probative force that notwithstanding the form of the account in the Bank, the money on deposit was in reality the sole property of Needa Allen, and that in opening the account and subsequently it was not the intention that John Allen should have a joint and equal interest therein.

In this case under consideration all the evidence available as to the condition and situation of the parties over the years as reflecting on the contributions of the husband and wife to the joint account and their intent in establishing it was presented and admitted. **The contract** did not contemplate an equal interest.

In the case of **Foraker, Exr., v. Kocks, Admrx., 41 Oh Ap 210**, it was held that, notwithstanding the non-existence of joint tenancy with right of survivorship, the parties may contract for joint ownership with such right, that, if joint tenancy is expressed without words of survivorship, it will be considered as a tenancy in common, and that where certificate of deposit and liberty bond were payable to husband and wife or either the presumption existed that the property was impressed with a contract of ownership wherein husband and wife had equal rights without any survivorship. In this case the husband and wife had a certificate of deposit which showed "Bernard or Katherine Noon, or either of them, has deposited with the Bank of Corning Company $1,100.00 payable to the order of either on the return of this certificate," etc.; when new certificates were issued at the end of six months periods, the old were endorsed by either or the other or both; and the husband was working and the wife unemployed, although the wife had certain property of her own when married. The trial court had found the funds to be their joint earnings, but the reviewing court observed if that finding had not been made by the trial court, the presumption would arise that at the time the money was placed in the certificate of deposit it was impressed with a contract of ownership, without survivorship, wherein they had

equal rights. 7 Corpus Juris., 640, is quoted, holding that "the presumption is that the interest of the joint depositors is equal."

In 30 N. P. N. S., 515, In re Estate of Thatcher, Judge McClelland, of this Court, held, in a case where husband and wife died within three days of each other, being governed by §2105.21 R. C., that "if there is no provision as to the right of survivorship in the joint account in this case, * * * each shall be entitled to half of the account, there being no evidence to destroy the presumption that they held the account as tenants in common."

In **Baker v. Dollar Savings and Trust Co., 15 Abs 385,** husband and wife had a joint bank account; the wife was a cripple and not a wage earner, but withdrawals had been made by her, and by him after her death; and no change in the name of the account had been made by him in the six weeks elapsing between her death and his.

Money in a joint bank account of husband and wife made up of the husband's earnings, containing no provision as to survivorship, belongs one-half to the estate of the wife who first died and the balance to the estate of the husband who died shortly thereafter without having made any changes in the account.

In the case here under consideration there was a survivorship provision in the contract, which was rendered ineffective by the simultaneous deaths of the parties.

It was held in **120 Oh St 542, In re Estate of Hutchison:**

Where a certificate of stock in a corporation is issued in the joint names of two persons by their agreement and consent, the delivery of the certificate to one is a delivery to both and the possession of one is the possession of both.

Where two persons purchase property to be owned by them in common during their joint lives and at the death of either to become the property of the other, each party has an undivided one-half interest and each has a vested estate in remainder in the one-half interest of the other.

In **Schwaigert v. Fitzhum et, 26 Abs 442** (Probate Court of Franklin County), there was a certificate of deposit issued to "C. F. or Katherine D. Vietmeier," and the subscription or signature card provided that "all money paid or hereafter paid is paid by the undersigned, such shares being held by the Association for their joint account, and may be repurchased by either before or after the death or incapacity of either, and either is authorized to pledge them as collateral." The Court held that, there being no other evidence as to ownership, half of the certificate belonged to C. F. and half to Katherine D.

Counsel for Josephine Markiewicz refers to the cases of **Abrams, Gdn. v. Nickel et, 50 'Oh Ap 500,** and **Waltenberger, Admr., v. Pearson et, 81 Oh Ap 51.** In the Waltenberger case there was involved the contents of a lock box, the disposition of which the Court held invalid as a testamentary disposition without a will; but as to certain bonds registered in the names of one person "and" another it held that the ownership upon the death of one of the persons is equally divided between the survivor and the administrator of the estate of such person. The Court refers to the holding in the Abrams case:

It has been held that the adjudication of lunacy and the appointment of a guardian of one of the parties to a joint and several account terminates the agreement, and, as each had a complete interest in the entire account, equity requires, in the absence of extraordinary circumstances, an equal division of the account between the parties as of the time the guardian was appointed.

The deaths of the members of the Markiewicz family in a common accident made impossible the carrying out of the survivorship provisions of the agreement, but certainly did not invalidate the agreement or contract as a joint ownership.

Numerous other cases and authorities have been cited by counsel and examined by the Court. None is exactly on all fours with this case. But by analogy we think many of their holdings may be applied to the decision of this matter.

In the earlier and leaner days the husband and wife in this case had both worked and apparently had pooled their endeavors and income in the common endeavor. This is indicated in part by the provisions of the partnership contract under which the Delmar organization was formed. The fact that in subsequent business the wife's name was not included does not, in our opinion, negative this conclusion. The increasing diversity of his endeavors and the character of the organizations of which he was a part would account for that.

The agreements under which these deposits were held is evidenced by the signature cards and other documents of the financial institutions involved. Such contracts are binding upon the parties. "The agreement, though executed upon a form furnished by the bank for its own protection, is operative and valid between the parties." 169 Calif., 257.

They show that Henry Markiewicz regarded his wife as a joint owner of the fund. His course of conduct was consistent. In all of the deposits he followed the same procedure. No revocation or attempt at revocation, even if a revocation had been possible, was made. We are constrained to believe that the contract was intended to and did vest in each party a one-half ownership, with a right of survivorship that failed because of the manner of death.

The possession of the pass books and other indicia of ownership by the husband does not of itself prove ownership in the husband.

The delivery of the bank book would not be essential since the contract takes the place of the delivery ordinarily required, 277 Mass., 395.

The deposit of money in a bank to the credit of the depositor or his wife, "or the survivor of them," operates as a gift to the wife, though she never had possession of the pass book. 40 N. Y. S., 422.

The possession is given upon the creation of the estate; the rights are absolutely and conclusively fixed; and the only question which is contingent (is) which of two or more joint tenants shall eventually own the entire estate. 66 A. L. R., 870.

Exclusive possession of a bank book by the creator of a joint and survivorship bank account does not necessarily operate prejudicially to the rights of the remaining joint depositors under the contract of deposit. 132 Oh St 377.

We are of the opinion that Henry Markiewicz by his contract intend-

ed to and did vest in Josephine Markiewicz a one-half ownership in the funds represented by the accounts in question here; that because of their simultaneous deaths the survivorship provisions were impossible of fulfillment, which did not affect the validity of the remainder of the contract; and that the estates of Henry Markiewicz and Josephine Markiewicz shall each receive one-half of such funds.

The exceptions of both parties are, therefore, sustained, and the inventories and appraisements may be amended to show one-half of the amounts in these four accounts in each estate.

Entry accordingly.